**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD J. PRATOLA, | Civil No. 11-5000 (FSH) |
| Plaintiff, | |
| v. | **OPINION** |
| DANIEL BORNSTEIN, et al., | |
| Defendants. | |

**APPEARANCES:**

> DONALD J. PRATOLA, Plaintiff Pro Se
> Bayside State Prison
> P.O. Box F-1
> Leesburg, NJ 08327

**HOCHBERG**, District Judge:

Donald J. Pratola, an inmate who is incarcerated at Bayside State Prison, seeks to file a Complaint against prosecutors Daniel Bornstein, Paula Dow, and Robert J. Carroll. This Court will grant Plaintiff's application to proceed in forma pauperis. This Court has screened the Complaint for dismissal, as required by 28 U.S.C. § 1915(e)(2)(B) and, for the reasons explained below, will dismiss the Complaint, without prejudice to the filing of an amended complaint.[1]

---

[1] Plaintiff should note that once an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]. 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1476 (1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

## I. BACKGROUND

Plaintiff asserts violation of his constitutional rights under 42 U.S.C. § 1983 by prosecutor Daniel Bornstein, former Essex County Prosecutor Paula Dow, prosecutor Robert J. Carroll, and unspecified Jane/John Does. He asserts the following facts:

> My original civil action was filed in 1993, whereas federal Judge H. Lee Saroken prematurely dismissed Plaintiff's civil action without prejudice, and later plaintiff case was overturned on the withholding of exculpatory evidence. Here again Plaintiff found more newly discovered evidence that is being withheld of DNA items, and sworn statements by three/four eye-witnesses who made statements that all three suspects are young and Black suspects. The murder weapon used in crime on 1-14-79, was removed from evidence vault in Trenton, then suddenly disappears and cannot be found. There was allegedly a struggle with the suspect and victim on 1-14-79, and this DNA evidence was destroyed and cut into swabs, and could not be DNA tested to prove Plaintiff was innocent of charges. All other DNA item tested were/are certified that Plaintiff's DNA was excluded at the crime scene. State and federal [illegible] refuses to test DNA found at the scene of the crime.

(Dkt. 1 at 5.)

Plaintiff further asserts that Daniel Bornstein violated Plaintiff's rights by "withholding of DNA evidence and four statements of prosecution witnesses who gave sworn statements that all three suspects were young Black suspects. Withheld several items of DNA evidence. Weapon used at murder was removed from evidence vault in Trenton on 7-28-92 and cannot be found. Clothing of victim cut into swabs for no reason." (Dkt. 1 at 4.) Plaintiff alleges that defendant Paula Dow "had full control of exculpatory evidence found on 2-24-10, as prosecutor of Essex County at that time. Worked in concert to con[c]eal all DNA and other evidence in Plaintiff case. Violated her own protocol that was promulgated on tainted identification on new

2

guidelines of procedures of identification." Id. Plaintiff asserts that Robert J. Carroll violated his rights as follows: "In August of 1993, defendant Robert J. Carroll and all John and Jane Doe's were caught withholding exculpatory evidence of states's key witness admitting he murdered victim on 1-14-79, Honorable Betty J. Lester overturned Plaintiff conviction. (This is in tape recording)." Id. Plaintiff seeks the following relief for violation of his constitutional rights:

> Need all DNA that was suppose[d] to be preserved for DNA tested turned over to Plaintiff. Need murder weapon that disappeared turned over to Plaintiff attorney's for DNA testing. Hold whoever is responsible for the destruction of victim's clothing and murder weapon, among other evidence that cannot be found be held responsible for their actions on their preservation of evidence that is an on-going obligation by the prosecutor.

(Dkt. 1 at 6.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks relief against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was

---

[2] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

3

previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Iqbal, 129 S. Ct. at 1949 (citation omitted). Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates. Id. at 1948-49. Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights. Id. This Court must disregard labels, conclusions, legal arguments, and naked assertions. Id. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed. Id. (citations and internal quotation marks omitted).

The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

4

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts") (emphasis supplied). The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III. DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins,

487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

This Court reads the Complaint as asserting that Essex County prosecutors withheld exculpatory evidence regarding a 1979 murder for which Plaintiff was convicted, consisting of DNA evidence, four exculpatory statements of witnesses called by the prosecution, and clothing of the victim. In addition, without linking it to the actions of any defendant, Plaintiff asserts that the murder weapon was removed and not returned. Finally, the context and timing of the alleged withholding of evidence is not set forth in Plaintiff's allegations, nor does Plaintiff specify when and what each named defendant allegedly did to cause the evidence to be withheld.

In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case," id. at 430-31, such as using misleading or false testimony and suppression of evidence favorable to the defense by a police fingerprint expert and investigating officer. Since Imbler, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application[,but] absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009) (citations omitted). Most recently, in Van de Kamp, the Supreme Court held that, although the challenged conduct of the prosecutor may be categorized as administrative, a supervisory prosecutor is absolutely immune for failing to

6

adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and failing to create any system for accessing information pertaining to the benefits provided to jailhouse informants. The Supreme Court explained:

> [Petitioner's] claims focus upon a certain kind of administrative obligation - a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.
>
> We reach this conclusion by initially considering a hypothetical case that involves supervisory or other office prosecutors but does not involve administration. Suppose that Goldstein had brought such a case, seeking damages not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues - all on the ground that they should have found and turned over the impeachment material about Fink. Imbler makes clear that all these prosecutors would enjoy absolute immunity from such a suit. The prosecutors' behavior, taken individually or separately, would involve preparation . . . for . . . trial, and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial. And all of the considerations that this Court found to militate in favor of absolute immunity in Imbler would militate in favor of immunity in such a case.
>
> The only difference we can find between Imbler and our hypothetical case lies in the fact that, in our hypothetical case, a prosecutorial supervisor or colleague might himself be liable for damages *instead* of the trial prosecutor. But we cannot find that

7

>difference (in the pattern of liability among prosecutors within a single office) to be critical. Decisions about indictment or trial prosecution will often involve more than one prosecutor.... We do not see how such differences... could alleviate Imbler's basic fear, namely, that the threat of damages liability would affect the way in which prosecutors carried out their basic court-related tasks.

Van de Kamp, 555 U.S. at 344-45.

In this Complaint, Plaintiff asserts that prosecutors withheld newly discovered evidence, consisting of DNA evidence and sworn statements of eyewitnesses, but Plaintiff does not specify the context or timing. And he asserts that a weapon used in the murder "was removed from evidence vault in Trenton on 7-28-92 and cannot be found," (Dkt. 1 at 4), but he does not link this to any defendant. The Third Circuit has ruled that prosecutors "are absolutely immune from claims based on allegations that they intentionally concealed evidence *prior* to trial" and during direct appeal. Yarris v. County of Delaware, 465 F. 3d 129, 137 (3d Cir. 2006) (internal quotation marks omitted). In addition, "[a]bsolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings... where the prosecutor is personally involved... and continues his role as an advocate, but that where the role as advocate has not yet begun... or where it has concluded, absolute immunity does not apply." Id. (citation and internal quotation marks omitted).

In this Complaint, Plaintiff's allegations are so vague that he does not specifically allege facts concerning the timing or context of the alleged withholding of evidence, nor does he specifically allege what each defendant actually did or describe the context of each defendant's conduct. This Court finds that on the skeleton facts alleged in this Complaint, Plaintiff has failed to state a claim for relief under the Iqbal standard and that, to the extent a claim is stated, the

8

defendant prosecutors are entitled to absolute immunity under Van de Kamp, 555 U.S. at 345. This Court will accordingly dismiss the Complaint. However, the Third Circuit has observed that "[t]he handling of requests to conduct scientific tests on evidence made after conviction - not related to grounds claimed in an ongoing adversarial proceeding - can be best described as part of the "prosecutor's administrative duties ... that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings" and "are not entitled to absolute immunity." Yarris at 138. Because it is conceivable that Plaintiff may be able to state a claim against one or more of the named defendants which may overcome the prosecutorial immunity bar by alleging additional, more specific facts, in an amended complaint, this Court will grant Plaintiff leave to file an amended complaint that is complete on its face which states a cognizable § 1983 claim satisfying the Iqbal standard against one or more named defendants. See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002) (court should not dismiss a complaint without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility).

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint without prejudice.

                                              s/ Faith S. Hochberg
                                              **FAITH S. HOCHBERG, U.S.D.J.**

Dated: November 22, 2011